IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BEVERLEE M. WARD-WHITE,

        Plaintiff,                        No. CIV S-07-1616 GGH

     vs.

MICHAEL J. ASTRUE,                 ORDER
Commissioner of
Social Security,

        Defendant.
                                   /

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI respectively of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is GRANTED, the Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to enter judgment for the Plaintiff. This matter is remanded to the Commissioner for further development of the record.

BACKGROUND

        Plaintiff, born January 9, 1960, applied on November 30, 2004 for disability benefits. (Tr. at 57, 60.) Plaintiff alleged she was unable to work due to post traumatic stress

disorder (PTSD), depression, asthma, right ankle pain, leg pain and back pain. (Tr. at 133-34.)

In a decision dated February 20, 2007, ALJ Laura Speck Havens determined plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. The claimant met the disability insured status requirements of the Act on January 31, 2003, the date the claimant alleges she became unable to work, and continues to meet them through the date of this decision.
>
> 2. The claimant has not performed substantial gainful activity since January 31, 2003.
>
> 3. The medical evidence establishes that the claimant has severe depression, asthma, and back spasms, but that she does not have an impairment, or combination of impairments, listed in or equivalent in medical severity to one listed in, Appendix 1, Subpart P, Regulations No. 4.

\\\\\

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4. The allegations of the claimant and her friend are not credible.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work, except: she can lift and carry up to twenty pounds occasionally and ten pounds frequently; she can stand for six hours in an eight-hour workday; she must be able to alternate between sitting and standing to relieve discomfort; she cannot climb ladders; she can stoop and bend occasionally; she must avoid concentrated exposure to dust, fumes, and smoke; she has a fair ability to deal with work stress and maintain attendance, with fair defined as limited but satisfactory (20 CFR 404.1545 and 416.965).

6. The claimant's past relevant work as receptionist did not require the performance of work-related activities precluded by the above-limitations (20 CFR 404.1565 and 416.965).

7. The claimant's impairments do not prevent the claimant from performing her past relevant work.

8. The claimant's residual functional capacity for the full range of sedentary to light work is reduced by the following limitations: she must be able to alternate between sitting and standing to relieve discomfort; she cannot climb ladders; she can stoop and bend occasionally; she must avoid concentrated exposure to dust, fumes, and smoke; she has a fair ability to deal with work stress and maintain attendance, with fair defined as limited but satisfactory.

9. The claimant is 47 years old, which is defined in the regulations as a "younger individual" (20 CFR 404.1563 and 416.963).

10. The claimant has a 12th grade education (20 CFR 404.1564 and 416.964).

11. Transferability of acquired work skills is not material to this decision.

12. If the claimant had the residual functional capacity to perform the full range of sedentary work, given her age, education, and work experience, section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16, and Rule 201.21 and 201.22, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, would direct a finding that the claimant is not disabled. If the claimant had the residual functional capacity to perform the full range of light work, given her age, education, and work experience,

|   |   |   |
|---|---|---|
| 1 | | section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16, and Rule 202.21 and 202.22, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, would direct a finding that the claimant is not disabled. |
| 2 | 13. | Although the claimant's additional nonexertional limitations do not allow her to perform the full range of sedentary to light work, using the above cited rule(s) as a framework for decisionmaking, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs are: small parts assembler, with 46,000 jobs in California; charge account clerk, with 5,000 jobs. |
| 8 | 14. | The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f) and (g), and 416.920(f) and (g)). |

(Tr. at 25-27.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Articulate Specific and Legitimate Reasons for Rejecting Nearly Every Mental Health Provider; and B. Whether the ALJ Failed to Articulate Any Reason for Not Crediting the Opinion of the State Agency Psychologist Indicating That Plaintiff Suffered From Moderate Concentration Limitations.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

4

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

Whether the ALJ Failed to Articulate Specific and Legitimate Reasons for Rejecting Nearly Every Mental Health Provider

Plaintiff contends that the ALJ discredited nearly every single mental health provider, essentially picking and choosing through their opinions, and failed to articulate specific and legitimate reasons to discredit them.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating

---

[2] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff objects to the ALJ's ultimate finding, based on evidence which the ALJ picked and chose, that plaintiff did not have a mental limitation which would impact plaintiff's ability to work. The ALJ's only mental limitation was that plaintiff "has a fair ability to deal with work stress and maintain attendance, with fair defined as limited but satisfactory." (Tr. at 26.) She concluded that plaintiff could do sedentary and light work with this and other physical limitations not at issue here. (Id. at 26-27.)

The transcript contains treatment records for mental health problems from March, 2001 to December, 2005, at both Westlane Medical Clinic ("WLMC") and San Joaquin Mental Health ("Mental Health"). Plaintiff was also examined by various consulting physicians.

Plaintiff was treated at Mental Health by Dr. Javeed and others from March 26, 2003 to December 19, 2005. Plaintiff objects to the ALJ's treatment of these records as supporting her conclusions when in reality they do not support her finding that plaintiff was not seriously limited by her mental impairment. Plaintiff claims that the ALJ did not discuss the

---

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

Kennedy Scale ratings utilized by Dr. Javeed, and did not explain why she discredited plaintiff's GAF assessment, especially in 2005 and 2006 when the GAF was 40 and plaintiff was experiencing auditory hallucinations.

In regard to Dr. Javeed and Mental Health, the ALJ reported plaintiff's complaints to this mental health clinic, but noted that as of June 24, 2005, plaintiff's presentation and mental status exam were inconsistent with her complaints. (Tr. at 20, 23.) For example, plaintiff complained of experiencing a nervous breakdown one year earlier; however, at the time of this alleged breakdown, there is little indication that plaintiff followed WLMC's instructions and went to Mental Health at this time. (Id. at 22.) In fact, in November, 2004, she told WLMC that she was doing well with Zoloft. (Id.) Plaintiff also complained that she cried easily, experienced a decrease in appetite, stayed in bed all day, had trouble sleeping, thought people were "out to get me," and had auditory hallucinations, yet the treating source found plaintiff to be neat, well groomed, with normal motor activity, euthymic mood, full and appropriate affect, normal rate and volume of speech, no evidence of delusional ideation, and logical and coherent thought content. The ALJ also acknowledged the diagnosis at this time of bipolar disorder. (Id. at 20.)

The treating records do not support the ALJ's characterization of them. On June 24, 2005, Dr. Javeed gave plaintiff a complete exam. Plaintiff reported she had twice attempted suicide in high school and in 1998, but that she had no current suicidal ideation. (Tr. at 216.) Plaintiff was currently taking Effexor and Seroquel.[4] (Tr. at 217.) At this time, plaintiff was neat and well groomed with good hygiene. She was cooperative and her motor activity was normal. Affect was full and appropriate. Mood was euthymic. There was no evidence of delusional ideation. Thought content was logical and coherent. Plaintiff sometimes had auditory hallucinations. (Id. at 218.) Plaintiff was oriented times three and able to focus. (Id. at 219.) She was found to have depression, psychosis, and anxiety, and was diagnosed with major

---

[4] Effexor is prescribed for depression. Seroquel is an antipsychotic medication, and may be used to treat bipolar disorder. www.pdrhealth.com.

7

depressive disorder, recurrent, and bipolar disorder type I. (Id. at 219-20.) On Axis IV, she was noted to have problems with primary support group, the social environment, and occupational problems. (Id. at 220.) Her GAF score was 46-50.[5] Kennedy Axis 5 scale indicated a psycholgical score of 40 and scores of 45 for social skills, violence, ADL-Occupational. (Id.) Plaintiff has provided a description of how this testing mechanism works. The scale appears to be similar to that used by DSM-IV in assessing GAF ratings, with scores of 40 to 45 indicating major psychological impairment.[6] Attach. to Pl.'s Mot. Dr. Javeed summarized that there was a substantial impairment in community functioning, including in the occupational area as well as in living arrangement, daily activities, and social relationships. Having identified a need for mental health supportive services, Dr. Javeed opined that there was an expectation of benefit from these proposed interventions. (Id. at 221.)

On June 27, 2005, Dr. Javeed recorded in a progress note plaintiff's diagnoses of bipolar disorder type I, borderline personality disorder, and GAF of 50. (Id. at 223.)

On July 25, 2005, plaintiff complained of being depressed, helpless, hopeless, and was tearful and having sleep problems. Nevertheless, Dr. Javeed noted that plaintiff was well

---

[5] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). According to the DSM IV, a GAF of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

[6] Major psychological impairment is described as:

> some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant; moderate paranoia; may have hallucinations or delusions; however, probably realizes they are not a part of reality); major impairment in several areas, such as judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is not motivated to work or moderate negative symptoms of schizophrenia); even to those who do not know him/her well would likely consider him/her to have mental problems.

(Attach. to Pl.'s Mot. at 3.)

dressed and nourished; her mood was labile; memory was intact. He diagnosed bipolar disorder type I and assessed a GAF of 50. At this time, he increased her dose of Effexor and decreased her dose of Seroquel. (Id. at 215.)

On December 19, 2005, plaintiff was grieving the death of her aunt. She was diagnosed with bipolar type I and prescribed Seroquel, Effexor, and Prozac. (Id. at 275.)

The ALJ appears to have adopted these records, yet has ignored many of the signs of marked limitations recorded by Dr. Javeed. An ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence). However, such selective reliance must be consistent with the medical record as a whole. See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable). Although "[a]n ALJ is not entitled to pick and choose through a physician's opinion," Sklenar v. Barnhart, 195 F. Supp. 2d 696, 703 n.6 (W.D.Pa. 2002) (citations and quotation omitted), he may give specific and legitimate reasons for declining to adopt part of an opinion. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (declining to adopt physician's opinion about onset date).

Here the ALJ did not provide specific or legitimate reasons for declining to adopt the most important aspects of Dr. Javeed's opinions. The ALJ did not give credence to repeated GAF scores of 46 to 50, and did not discuss the Kennedy Scale ratings or Dr. Javeed's limitations in plaintiff's functioning as described in the June 24, 2005 report. She also failed to even mention many of the functional impairments found by this treating psychiatrist, or discuss the diagnoses of record.[7] Although the ALJ is not required to discuss every piece of evidence, the record does need to demonstrate that he considered all of the evidence, and in this case it does

---

[7] Defendant argues that Dr. Javeed's report contains "his (largely normal) mental status findings and diagnoses." Def.'s Cross-Mot. at 2. It is difficult to comprehend how defendant could have interpreted these records to contain normal findings.

not.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (finding ALJ's summary conclusion that appellant's impairments did not meet or equal any Listed Impairment was a bare conclusion beyond meaningful judicial review).

The ALJ makes a big point out of the fact that plaintiff did well while on medications, and stopped seeking mental health treatment after her aunt died because her aunt was someone who had encouraged her to get treatment and took her to appointments.  (Id. at 322.)  For this reason, the ALJ explained that she was rejecting in part Drs. Kalman and Daigle's reports as plaintiff's presentation to her treating sources in June, 2005 was "quite different than what Dr. Kalman and Dr. Daigle observed." (Id. at 23.)  The ALJ found her statement that she stopped going to Mental Health after her aunt died to be not credible as she did return there after her aunt's death.  (Id.)  Nonetheless, Dr. Javeed's report from June 24, 2005, indicates serious problems *despite* regular treatment and medication during this time period.  In fact, this report is dated prior to the time of plaintiff's aunt's death.  (Id. at 216.)  Therefore, Dr. Javeed's report refutes the ALJ's reasons for rejecting Drs. Kalman and Daigle, and indicates that there were signs of significant mental problems which the ALJ completely ignored without discussing, in effect rejecting Dr. Javeed's treating source assessment without providing specific and legitimate reasons.

With respect to Dr. Behniwal, plaintiff contends that the ALJ failed to explain her basis for not crediting this opinion in its entirety.  In this regard, the ALJ reviewed the opinion, dated March 5, 2005. (Tr. at 19.)  This psychiatrist examined plaintiff at the request of the Agency.  The ALJ noted the finding that plaintiff would have moderate difficulty in performing activities on a consistent basis due to her sleeping habits.  She would sometimes have moderate difficulty maintaining regular attendance at the workplace, completing a normal workweek, and dealing with stress at work.  (Id. at 19.)  Other than this summary, the ALJ did not discuss this report and appears to have impliedly adopted it.  In posing a hypothetical to the expert, however, the ALJ impliedly rejected this report when she failed to include Dr. Behniwal's limitations of

"moderate difficulty performing work activities on a consistent basis because of her sleep habits," and "moderate difficulty in maintaining regular attendance and completing a normal workday/workweek and in dealing with the usual stress encountered in competitive work." (Id. at 173.) The ALJ's hypothetical stated only that plaintiff had a fair (limited but satisfactory) ability to deal with work stress and maintain attendance. (Id. at 327.) In her decision, the ALJ described plaintiff's functional ability in regard to her mental state as "a fair ability to deal with work stress and maintain attendance, with fair defined as limited but satisfactory." (Id. at 24.) The ALJ's interpretation of plaintiff's functional limitations does not equate to Dr. Behniwal's stated limitations. In failing to rely on Dr. Behniwal's limitations, she was required to provide specific and legitimate reasons to reject this examining physician, and she failed to do so.

It is not true, as defendant suggests, that this psychiatrist's report was largely normal. He diagnosed mood disorder, not otherwise specified, and post traumatic stress disorder. (Id. at 173.) There were no major stressors at this time, and GAF was 65, all of which suggest a lack of severe mental impairment. (Id.) Nevertheless, Dr. Behniwal did impose the moderate functional limitations described above and, as stated *supra* in regard to Dr. Javeed, the ALJ cannot pick and choose parts of a physician's opinion without providing specific reasons for rejecting other parts. The ALJ failed in this regard.

Defendant claims that the term "moderate" as used in Dr. Behniwal's report comports with Social Security's form defining moderate as evidencing some limitation but that the plaintiff can do the function in a satisfactory manner. Defendant refers to a form used by the SSA entitled "medical source statement of ability to do work-related activities (mental)." (Id. at 295.) Defendant has provided no evidence that Dr. Behniwal meant to use the term "moderate" in the same manner used by the SSA. The record requires remand for clarification on this basis as well.

The ALJ discounted the weight given two consulting sources, Drs. Daigle and Kalman, because although they examined plaintiff more recently, she had stopped receiving

treatment approximately four to seven months earlier. Thus, the ALJ explained, her presentation to these consultants was not consistent with her condition on receiving regular treatment and medication. (Tr. at 24.) The ALJ also noted some discrepancies between their reports and the rest of the record, including the fact that Dr. Kalman noted that plaintiff's condition had started more than thirty years earlier; however, plaintiff had worked through at least 2000. Furthermore, plaintiff's friend testified that she had observed a difference in plaintiff in the past three years only. (Tr. at 24.) In regard to Dr. Daigle, the ALJ noted that this psychiatrist did not have the benefit of plaintiff's treatment records. (Id.) Therefore, the ALJ gave these doctors less weight than she gave the treatment records.

The court agrees that the ALJ's analysis is flawed for the reasons mentioned previously in this opinion. The ALJ appeared to give the treating records more weight; however, she ignored much of those records without explanation. It is true that plaintiff had stopped treatment three to seven months prior to these exams. The last treating record in the file is dated December 19, 2005. (Tr. at 275.) Nevertheless, plaintiff's presentation to these consultants does appear to be consistent with her presentation to her treating sources, contrary to the ALJ's pronouncement. (Id. at 24.) When presenting to Dr. Daigle, plaintiff was "quite depressed and affect was sad and she seemed to be grieving with recurring tearfulness. She stated that as recently as June she had suicidal thoughts but she did not express current suicidal ideations." (Tr. at 291.) In presenting to Dr. Javeed, plaintiff was tearful with mood swings, feelings of hopelessness and helplessness, and of being overwhelmed. (Id. at 223, 215.) With both doctors, plaintiff was alert, cooperative and pleasant, but significantly depressed. (Id. at 290, 216, 215.)

The ALJ rejected Dr. Daigle's finding that plaintiff's condition might require twelve months to treat given her current level of depression, because he did not have the opportunity to review plaintiff's treatment records. (Id. at 24, 292.) He was provided with Dr. Behniwal's March 5, 2005 report as well as Dr. Kalman's April 4, 2006 report. (Id. at 288.) As aptly pointed out by plaintiff, this physician was retained by the Department of Social Services,

and it was the Department's responsibility to provide him with the treating records. The fact that it did not provide these records should not be used against plaintiff.

The ALJ also distinguished Dr. Kalman's report from the treating source records by indicating that plaintiff reported to this psychiatrist that her condition started more than 30 years ago; however, Dr. Javeed and Mental Health also noted a 28 year history of depression. (Id. at 223.) It is true that plaintiff performed substantial gainful activity through at least 2000; however, the fact that she mentioned a thirty year history to Dr. Kalman is not a reason to reject his opinion. In fact, plaintiff did tell this doctor that she last worked about two years prior to this April 14, 2006 exam, and was a CNA for 15 years, as well as a cashier. (Id. at 243.) These distinctions by the ALJ are without a difference.

In any event, both Drs. Daigle and Kalman gave opinions that are consistent with the treating sources. Dr. Daigle diagnosed major depression with psychotic features, moderate psychosocial stressors, and a GAF of 50. (Id. at 292.) Functionally, he opined that plaintiff was slightly to moderately limited in ability to understand, remember and carry out simple instructions, moderately limited in ability to follow detailed and complex instructions, moderately limited in ability to relate and interact with others, moderately to markedly limited in maintaining concentration, attention, persistence and pace, moderately to markedly limited in ability to associate with day to day work activity, including attendance and safety, and moderately to markedly limited in ability to deal with stresses of work. (Id. at 292-93.)

Dr. Kalman had most of the treating records for his review and examined plaintiff on April 14, 2006. He also diagnosed major depression with psychotic features and assigned a GAF of 45. (Id. at 245.) He opined that plaintiff's condition would not improve significantly in the next twelve months. (Id.)

Dr. Kalman completed a medical source statement, finding that plaintiff was mildly limited in ability to understand and remember detailed instructions, mildly limited in ability to carry out simple instructions, moderately limited in ability to carry out detailed

instructions, moderately limited in ability to maintain attention and concentration for extended periods, mildly limited in ability to sustain a routine without special supervision, moderately limited in working with others without being distracted, mildly limited in ability to make simple work related decisions, and moderately limited in ability to complete a normal work day and week without interruptions. (Id. at 248.) Plaintiff was moderately limited in ability to interact with others, accept instructions or criticism from supervisors, and get along with others. (Id. at 248-49.) She was mildly limited in ability to ask simple questions or request assistance, respond appropriately to changes in the work setting, travel to unfamiliar places or use public transportation, and to set realistic goals independently of others. In addition to the aforementioned limitations, Dr. Kalman opined that the following stressors would increase plaintiff's level of impairment beyond that indicated above: unruly, demanding or disagreeable customers, even on an infrequent basis, production demands or quotas, a demand for precision, and a need to make quick, accurate and independent decisions consistently. (Id.) This psychiatrist opined that plaintiff would be unable to work three or four times or more per month. (Id. at 250.)

These opinions are consistent with the treating opinions in finding that plaintiff had serious mental diagnoses, and was moderately to markedly limited in certain functions. The ALJ's rejection of them, and her decision to ignore important aspects of the reports upon which she purportedly relied, left her with only the non-examining physician reports upon which to rely, and such reliance does not amount to substantial evidence. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (emphasis in original). "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.1984), *quoting* Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir.1984). See also Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007) (opinion of non-treating

physician, when based on the same evidence relied on by the treating physician, but supporting a different conclusion from the treating source, would not be considered substantial evidence).

The State Agency source opined that plaintiff had a "moderately limited ability to understand, remember, and carry out detailed instructions. There were no other mental limitations."[8] (Id. at 23, 182-88.) The ALJ did not state whether she relied on this opinion or not, but merely summarized it. The DDS physician relied on the treating records described above to come to a different conclusion that was not supported by substantial evidence. The sum total of this non-examining physician's analysis was "clmt. appears capable of SGA at this time."[9] (Id. at 184.)

Plaintiff's contention that the ALJ failed to include in her hypothetical to the VE the DDS limitation regarding moderately limited ability to understand, remember and carry out detailed instructions, although correct, need not be addressed as the court finds this report is not based on substantial evidence in the first instance.

Because the ALJ relied on only parts of some treating opinions and Dr. Behniwal's opinion, while ignoring significant portions of those opinions, and further rejected the opinions of Drs. Kalman and Daigle without specific and legitimate reasons, her implicit and express rejections are not supported by substantial evidence.

If additional administrative proceedings would remedy the defects in the decision, remand is appropriate. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp. 1273, 1277-78 (C.D.Cal. 1996). The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). In general, the

---

[8] In this respect, plaintiff has incorrectly characterized this opinion as it did not place any limitations on concentration. (Id. at 182-83.)

[9] This section of the check-marked form requests the physician to "be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations." (Id.)

15

court will consider factors such as the completeness of the record, the weight of evidence in plaintiff's favor, and the potential harm to plaintiff due to further delay. Social Security Law and Practice, § 55.60 (1987).

In this case, remand for a proper analysis is necessary as it is possible that even with the limitations imposed by some of the physicians, plaintiff may still be able to do some type of work. On remand, the ALJ must decide on which doctors she will rely, while properly rejecting those upon which she will not rely according to the proper legal standards, and then proceed with the sequential analysis by calling on a vocational expert to determine whether plaintiff can work based on specified mental limitations that are supported by examining sources.

## CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is granted, the Commissioner's Cross Motion for Summary Judgment is denied, and judgment is entered for the plaintiff. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further findings in accordance with this order.

DATED: 03/10/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Ward-White1616.ss.wpd